# 11-3920

To Be Argued By: Bernard V. Kleinman, Esq.
Attorney for Defendant-Appellant

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

==========================

### United States of America,

### Appellee,

*— versus —*

### Ramzi Ahmed Yousef,
### Defendant-Appellant,

**Mohammad A. Salameh, Nidal Ayyad, Mahmud Abouhalima, AKA Mahmoud Abu Halima, Bilal Alkaisi, AKA Bilal Elqisi, Ahmad Mohammad Ajaj, AKA Khurram Khan, Abdul Rahman Yasin, AKA Aboud, Abdul Hakim Murad, AKA Saeed Ahmed, Eyad Ismoil, AKA Eyad Ismail, Wali Khan Amin Shah, AKA Grabi Ibrahim Hahsen, Khalid Skeikh Mohammed, AKA Mukhtar, AKA Mukhtar al Baluchi, AKA Al-Mukh, AKA Abdulrahman Abdullah al-Ghamdi, AKA Salem Ali, Walid Bin Attash, AKA Khallid Bin Attash, AKA Saleen Saeed Mohammed Yousaf, AKA Tawfig Muhammed Salih Rashid, AKA Silver, Ramzi Bin Al-Shibh, AKA Abu Ubaydah, AKA Ahad Abdollahi Sabet, Ali Abdul Aziz Ali, AKA Aliosh, AKA Ali A, AKA Isam Mansur, AKA Ammar al-Baluchi, AKA Hani, Mustafa Al-Hawsawi, AKA Hashem Abdulraham, AKA Hashem Abdollahi, AKA Mustafa Ahmed, AKA Zaher, AKA Khal,**
**Defendants.**

==========================

## BRIEF FOR DEFENDANT-APPELLANT YOUSEF

==========================

## AN APPEAL FROM A JUDGMENT OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

Law Office of Bernard V. Kleinman, PLLC
Attorney for Defendant-Appellant
2 Gannett Drive, Suite 418
White Plains, NY 10604
Tel.: (914) 644-6660
Fax: (914) 694-1647
Email: attrnylwyr@yahoo.com

# *TABLE OF CONTENTS*

I. TABLE OF AUTHORITIES .......................................................... ii

II. STATEMENT PURSUANT TO F.R.A.P. RULE 28(a)(2) ....................... 1

III. ISSUES PRESENTED ............................................................ 2

IV. STATEMENT OF FACTS ......................................................... 3

V. POINT ONE ......................................................................... 5
     THE DISTRICT COURT COMMITTED REVERSIBLE ERROR IN
     DISMISSING APPELLANT'S HABEAS CORPUS PETITION AND
     TRANSFERRING IT TO THE DISTRICT OF COLORADO

VI. POINT TWO ....................................................................... 16
     THE DISTRICT COURT COMMITTED AN ABUSE OF
     DISCRETION IN DENYING CJA COUNSEL ANY FEES UNDER
     THE CRIMINAL JUSTICE ACT FOR WORK PERFORMED
     PURSUANT TO HIS ORDER OF APPOINTMENT

VII. POINT THREE .................................................................... 29
     THE DISTRICT COURT ERRED IN DENYING PETITIONER'S
     MOTION FOR RECONSIDERATION

VII. CONCLUSION ................................................................... 37

VIII. STATEMENT PURSUANT TO F.R.A.P. RULE 32 ........................ 38

IX. AFFIRMATION OF SERVICE ................................................. 39

# TABLE OF AUTHORITIES

*SUPREME COURT*
*Braden v. 30th Judicial Circuit Ct. of Ky.*, 410 U.S. 484 (1973) .................... 34
*Fed. Trade Comm'n v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411 (1990) .. 24
*Mayer v. City of Chicago*, 404 U.S. 189 (1971) ........................................ 24
*Rasul v. Bush*, 542 U.S. 466 (2004) ...................................................... 34
*Rumsfeld v. Padilla*, 542 U.S. 426 (2004) ......................................... *passim*
*Wales v. Whitney*, 114 U.S. 564 (1885) .................................................. 11


*CIRCUIT COURTS OF APPEALS*
*Armentero v. INS*, 412 F.3d 1088 (9th Cir. 2005) ................................ 11
*BDC 56 LLC, In re*, 330 F.3d 111 (2d Cir. 2003) .................................... 32
*Eastway Constr. Corp. v. City of New York*, 821 F.2d 121 (2d Cir.),
    *cert. denied* 484 U.S. 918 (1987) .................................................. 22
*Gooden v. Gonzalez*, 162 Fed. Appx. 28 (2d Cir. 2005) ........................ 16
*Holocaust Victim Assets Litigation, In re*, 424 F.3d 158 (2d Cir. 2005) ...... 23
*Linden v. District Council 1707-AFSCME*, 415 Fed. Appx. 337,
    2011 WL 1054031 (2d Cir.), *cert. denied* ⸺ U.S. ⸺ (2011) ............. 31
*Meyers v. Martinez*, 402 Fed. Appx. 735 (3d Cir. 2010) ...................... 11
*Perez v. Hoblock*, 368 F.3d 166 (2d Cir. 2004) ................................... 14
*Shahiar v. Smith & Wollensky Restaurant Group, Inc.*, 659 F.3d 234
    (2d Cir. 2011) ......................................................................... 23
*Shrader v. CSX Transportation Co.*, 70 F.3d 255 (2d Cir. 1995) ............ 31
*Sole Resort, S.A. De C.V. v. Allure Resort Management, LLC*,
    2008 WL 4643787 (2d Cir. 2008) .................................................. 7
*Thompson v. Choinski*, 525 F.3d 205 (2d Cir. 2008),
    *cert. denied* ⸺ U.S. ⸺ (2009) .................................................. 9
*United States v. Bah*, 574 F.3d 106 (2d Cir. 2009) ............................. 21
*United States v. Bailey*, 581 F.2d 984 (D.C. Cir. 1978) .................... 25, 27
*United States v. Burnett*, 989 F.2d 100 (2d Cir. 1993) ................... 21, 25, 28
*United States v. Canady*, 126 F.3d 352 (2d Cir. 1997),
    *cert. denied* 522 U.S. 1194 (1998) .............................................. 15
*United States v. Frankel*, 2011 WL 5041691 (2d Cir. 2011) ................. 21
*United States v. Gonzalez*, 647 F.3d 41 (2d Cir. 2011) ...................... 23
*United States v. Joshua*, 607 F.3d 379 (4th Cir. 2010) .................... 10
*United States v. Melendez-Carrion*, 811 F.2d 780 (2d Cir. 1987) .......... 25
*United States v. Munson*, 2009 WL 3198805 (2d Cir. 2009) ................. 25
*United States v. Oliver*, 626 F.2d 254 (2d Cir. 1980) ........................ 28
*United States v. Parker*, 439 F.3d 81 (2d Cir.), *cert. denied* 549 U.S. 985 (2006) .. 24
*United States v. Perry*, 471 F.2d 1069 (D.C. Cir. 1972) ...................... 24

*United States v. Piervinanzi*, 23 F.3d 670 (2d Cir.),
    *cert. denied* 513 U.S. 904 (1994) .................................................... 24
*United States v. Quiroz*, 22 F.3d 489 (2d Cir. 1994) ............................ 14
*United States v. Sanchez*, 912 F.2d 18 (2d Cir. 1990) .......................... 24
*United States v. Yousef*, 327 F.3d 56 (2d Cir.), *cert. denied* 540 U.S. 933 (2003) ..... 17, 28
*United States v. Yousef*, 395 F.3d 76 (2d Cir. 2005) ......................... 16, 26
*Virgin Atlantic Airways, Ltd. v. National Mediation Bd.*,
    956 F.2d 1245 (2d Cir.), *cert. denied* 506 U.S. 820 (1992) ............ 33
*Washington v. Fischer*, 150 Fed. Appx. 8 (2d Cir. 2005),
    *cert. denied* 546 U.S. 1217 (2006) ......................................... 15
*Williams v. Citigroup, Inc.*, 659 F.3d 208 (2d Cir. 2011) .................... 23
*Wolters Kluwer Financial Serv., Inc. v. Scivantage*, 564 F.3d 110 (2d Cir.)
    *cert. denied sub nom. Peters v. Scivantage*, — U.S. — (2009) ......... 23
*Zervos v. Verizon New York, Inc.*, 252 F.3d 163 (2d Cir. 2001) ............. 22


DISTRICT COURTS
*Abner v. Secretary of Dep't of Homeland Security*,
    2006 WL 1699607 (D. Conn. 2006) ...................................... 11
*Blackstock v. Hufford*, 2011 WL 2470425 (M.D. Pa. 2011) ................ 16
*Brown v. New York*, 2011 WL 3511004 (E.D.N.Y. 2011) ................... 15
*Byrne v. Liquid Asphalt Sys., Inc.*, 250 F. Supp.2d 84 (E.D.N.Y. 2003) ......... 32
*Carballo v. LaManna*, 2006 WL 3230761 (D.S.C. 2006) ................... 13
*Cox v. Holt*, 2009 WL 4015567 (M.D. Pa. 2009) ........................... 16
*Dawkins v. New York*, 2011 WL 3625150 (E.D.N.Y. 2011) ............... 16
*Dickerson v. USAir, Inc.*, 2001 WL 12009 (S.D.N.Y. 2001) ............... 33
*Drakoulis v. Ashcroft*, 356 F. Supp.2d 367 (S.D.N.Y. 2005) ............... 9
*Evans v. United States*, 2010 WL 2026433 (E.D.N.Y. 2010), *aff'd*
    419 Fed. Appx. 53, 2011 WL 1261630 (2d Cir. 2011) ............... 12
*Farez-Espinoza v. Napolitano*, 2009 WL 1118098 (S.D.N.Y. 2009) ......... 29
*Figueroa v. United States*, 2011 WL 3423390 (S.D.N.Y. 2011) ............. 15
*Gibson v. Wise*, 331 F. Supp.2d 168 (E.D.N.Y. 2004) ...................... 29
*Grand Crossing, L.P. v. United States Underwriters Ins. Co.*,
    2008 WL 4525100 (S.D.N.Y. 2008) ...................................... 32
*Grand River Enterprises Six Nations, Ltd. v. King*, 2009 WL 1739893
    (S.D.N.Y. 2009) .......................................................... 31, 32
*Gustafson v. Williams*, 2010 WL 1904518 (D. Nev. 2010) ................ 13
*Hoyte v. Holder*, 2011 WL 1143043 (S.D.N.Y. 2011) ..................... 35
*Jabarah v. Garcia*, 2010 WL 3834663 (S.D.N.Y. 2010) ................... 6, 33
*Jackson v. Killian*, 2010 WL 2103646 (S.D.N.Y. 2010) ................... 31
*Jiang Xue Qiang v. I.N.S.*, 2006 WL 1026710 (E.D.N.Y. 2006) .......... 36
*Keating v. People of the State of New York*, 2009 WL 3401756 (E.D.N.Y. 2009) ..... 27

*Melo v. United States*, 2011 WL 5597432 (S.D.N.Y. 2011) ............................ 15
*Range Road Music, Inc. v. Music Sales Corp.*, 90 F. Supp.2d 390 (S.D.N.Y. 2000) .. 31
*Remington Prods., Inc. v. North American Philips Corp.*,
    755 F. Supp. 52 (D. Conn. 1991) ............................................ 29
*Romero v. United States*, 2001 WL 921167 (S.D.N.Y. 2001) ........................... 15
*RST (2005) Inc. v. Research in Motion, Ltd.*, 2009 WL 274467 (S.D.N.Y. 2009) .... 33
*Santulli v. United States*, 2003 WL 21488084 (S.D.N.Y. 2003) ....................... 10
*SEC v. Ashbury Capital Partners*, 2001 WL 604044 (S.D.N.Y. 2001) ................. 32
*Shehnaz v. Ashcroft,* 2004 WL 2378371 (S.D.N.Y. 2004) ........................... 35, 36
*Thelemaque v. Ashcroft*, 363 F. Supp.2d 198 (D. Conn. 2005) ....................... 35
*Ulloa v. Ledezma*, 08-cv-864 (W.D. Okla. July 1st, 2009) ......................... 13
*United States v. Calle*, 178 F. Supp.2d 309 (E.D.N.Y. 2001) ...................... 24
*United States v. Delvi*, 2004 WL 235211 (S.D.N.Y. 2004) .......................... 30
*United States v. Greenfield*, 2001 WL 1230538 (S.D.N.Y. 2001) .................... 30
*United States v. James*, 301 F. Supp. 107 (W.D. Tex. 1969) ....................... 27
*United States v. Keeble*, 2008 WL 1792935 (N.D. Tex. 2008) ....................... 25
*United States v. Mottley*, 2003 WL 22083420 (S.D.N.Y. 2003) ...................... 30
*United States v. Mukhtaar*, 2008 WL 2151798 (S.D.N.Y. 2008) ...................... 27
*United States v. Porter*, 2011 WL 3348229 (E.D.N.Y. 2011) ........................ 27
*United States v. Porter*, 2010 WL 7141468 (E.D.N.Y. 2010) ........................ 26
*United States v. Sessa*, 2011 WL 256330 (E.D.N.Y. 2011) .......................... 28
*United States v. Tutino*, 419 F. Supp. 246 (S.D.N.Y. 1976) ....................... 25
*United States v. Yousef,* 2011 WL 3422834 (S.D.N.Y. 2011) .................... *passim*
*United States v. Yousef,* 2011 WL 4424334 (S.D.N.Y. 2011) .................... *passim*
*White v. Drake*, 2011 WL 4478921 (N.D.N.Y. 2011) ................................. 14
*Zhen Yi Guo v. Napolitano*, 2009 WL 2840400 (S.D.N.Y. 2009) ..................... 36


S̲T̲A̲T̲U̲T̲E̲S̲/R̲U̲L̲E̲S̲/S̲E̲C̲O̲N̲D̲A̲R̲Y̲ S̲O̲U̲R̲C̲E̲S̲
18 U.S.C. § 3006A ............................................................. 16-28
Local Rule 6.3, S.D.N.Y. ....................................................... 29
Rule 59, Federal Rules of Civil Procedure ...................................... 29
Rule 60, Federal Rules of Civil Procedure ...................................... 29
Sneed, Jos., *Trial Court Discretion: Its Exercise by*
    *Trial Courts and its Review by Appellate Courts* ............................ 22

## STATEMENT PURSUANT TO F.R.A.P. RULE 28(a)(2)

Appellant RAMZI YOUSEF appeals the dismissal and transfer of his habeas corpus petition, duly filed on June 17th, 2011.  See Appendix M.  Said dismissal was made pursuant to the lower court's decision and order of July 22d, 2011.  *United States v. Yousef*, 2011 WL 3422834 (S.D.N.Y. 2011), annexed hereto as Appendix C.  See discussion in Point One *infra*.  Subsequent thereto Yousef filed a motion for re-consideration on or about September 22d, 2011.  This motion was denied by the lower court.  See *United States v. Yousef*, 2011WL 4424334 (S.D.N.Y. 2011), reproduced at Appendix D.  See discussion in Point Three *infra*.

On September 12th, 2011 the lower court denied any payment, whatsoever to assigned counsel.  This was done without a written decision and order.  See discussion in Point Two, *infra*.

On or about September 21st, 2011, a Notice of Appeal of the district court's dismissal of Yousef's habeas petition was filed with this Court.  See Appendix B.

Counsel herein appears pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A(b), (d)(7).

## *ISSUES PRESENTED*

1. Did the lower federal court err in denying Yousef's petition for habeas corpus relief, and transfer to the District of Colorado?    See Point One *infra* at p. 5.

2. Did the lower court violate the letter and spirit of the Criminal Justice Act, 18 U.S.C. § 3006A, by denying any payment to assigned counsel?  See Point Two *infra* at p. 16.

3. Was the lower court in error in denying Yousef's Motion for Reconsideration?  See Point Three *infra* at p. 29.

## FACTS

Since in or around 1996 the Petitioner has been subject to Special Administrative Measures (hereinafter referred to as "SAMs"), issued pursuant to 28 C.F.R. § 501.3. These SAMs have been re-upped annually since Petitioner's incarceration; the most recent re-newal taking place on or around November 21st, 2010. The SAMs have a one year limitation before they must be re-newed by the Attorney General, or his designee. In or around April 8th, 2010, this Court appointed counsel herein, pursuant to the Criminal Justice Act. See order of this Court dated April 08, 2010, Docket Entry No. 827, annexed hereto as Appendix E.

On or about September 8th, 2010, the Court was informed that the CJA assignment referenced above was for the likely purpose of challenging the Special Administrative Measures. See Docket Entry No. 829, under seal. On or about June 17th, 2011, Petitioner did, by and through counsel herein, file his habeas corpus Petition, accompanying Memorandum of Law, and Exhibits, with the District Court, and did serve a copy upon the Office of the U.S. Attorney for the Southern District of New York. See 93-cr-180, District Court Docket Entry No. 841. Attached hereto as Appendix M.

Notwithstanding that the Government never responded to Yousef's Petition for relief, this Court, on or about July 22d, 2011, issued a four page Decision and

3

Order, dismissing Yousef's Petition, and transferring the matter to the U.S. District Court for the District of Colorado. *United States v. Yousef*, 2011 WL 3422834 (S.D.N.Y. 2011), annexed hereto as Appendix C.

On September 2nd, 2011 Counsel herein filed a Motion for Reconsideration with the District Court. This Motion was filed forty-two days after the initial decision by the District Court (*i.e.*, July 22nd, 2011). This Motion (see Appendix F) cited, as authority for making the motion, Rule 60(b)(1) of the Federal Rules of Civil Procedure. It included a thirteen page Affirmation/Memorandum of Law, and two exhibits (including the decision of July 22d). On or about September 20th, 2011 the District Court issued a four paragraph Memorandum and Order denying the Motion. See *United States v. Yousef*, 2011WL 4424334 (S.D.N.Y. 2011), reproduced at Appendix D.

On or about September 21st, 2011, a Notice of Appeal of the district court's dismissal of Yousef's habeas petition was filed with this Court. See Appendix B.

Counsel herein appears pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A(b), (d)(7).

4

## POINT ONE

## THE DISTRICT COURT ERRED IN DENYING APPELLANT YOUSEF'S HABEAS CORPUS PETITION & TRANSFERRING THE PETITION TO THE DISTRICT OF COLORADO

*Background*

The underlying facts in that issue are clearly laid out in Appellant's original Habeas Petition (see Appendix M) and his Motion for Reconsideration (see Appendix F), and in Point Three *infra*. However, in the interests of setting forth the bare essentials, herein, Appellant will set forth the basics.

Since in or around 1996 the Petitioner has been subject to Special Administrative Measures, issued pursuant to 28 C.F.R. § 501.3. These SAMs have been re-upped annually since Petitioner's incarceration; the most recent re-newal taking place on or about November 21st, 2011. The SAMs have a one year limitation before they must be re-newed by the Attorney General, or his designee. In or around April 8th, 2010, this Court appointed counsel herein, pursuant to the Criminal Justice Act. See order of this Court dated April 08, 2010, Docket Entry No. 827, annexed hereto as Appendix E.

On or about September 8th, 2010, the Court was informed that the CJA assignment referenced above was for the likely purpose of challenging the Special Administrative Measures. See Docket Entry No. 829, under seal. On or about June 17th, 2011, Petitioner did, by and through counsel herein, file his habeas

5

corpus Petition, accompanying Memorandum of Law, and Exhibits, with the District Court, and did serve a copy upon the Office of the U.S. Attorney for the Southern District of New York.  See 93-cr-180, District Court Docket Entry No. 841.  See Appendix M.

Notwithstanding that the Government never responded to Yousef's Petition for relief, this Court, on or about July 22d, 2011, issued a four page Decision and Order, dismissing Yousef's Petition, and transferring the matter to the U.S. District Court for the District of Colorado.  *United States v. Yousef*, 2011 WL 3422834 (S.D.N.Y. 2011), annexed hereto as Appendix C.

## *Legal Argument*

It is the position of the Appellant herein, that the lower court erred in its decision and misapplied the relevant case and statutory law.  Judge Duffy, in his brief opinion, relied upon the Supreme Court decision in *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), holding that habeas petitions challenging conditions of confinement must be filed in the district in which the inmate is incarcerated, and holding that the named respondent must be the warden or other party responsible for that facility.  *Id.* at 435, 436, cited to at 2011 WL 3422834 at *1.[1]  The Court further cited to *Jabarah v. Garcia*, 2010 WL 3834663 (S.D.N.Y. 2010).

---

[1] It should be noted that the High Court's ruling in *Padilla* was phrased in the context of being a "general rule": "The plain language of the habeas statute thus confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement."  542 U.S. at 443.  As a "general rule" it will always be

Appellant addresses the primary issues raised by both *Padilla* and *Jabarah* in Point Three *infra*. However, there are specific points that need to be made clear that demonstrate (1) the lower court's failure to properly accept jurisdiction over this habeas petition, and (2) that Petitioner-Appellant's habeas petition should have been granted.[2] Indeed, the main and overarching thrust of this argument is that Yousef's petition for habeas relief, not only focused entirely and solely upon the issue of the determination of him being subject to the Special Administrative Measures, but this was made clear repeatedly in, not only the initial Petition and Memorandum of Law, but also the accompanying Exhibits (specifically Yousef's utilization of the Bureau of Prisons' Administrative Remedy Program, see Exhibit B annexed to Yousef Petition),[3] and in his Motion for Reconsideration. The complete and total failure of the lower court to recognize what was set forth

---

subject to exceptions, it is not what one may call a "hard and fast rule", that is not subject to exceptions. See generally *Sole Resort, S.A. De C.V. v. Allure Resort Management, LLC*, 2008 WL 4643787 at *2 (2d Cir. 2008); *United States v. Piervinanzi*, 23 F.3d 670, 683 (2d Cir.), *cert. denied* 513 U.S. 904 (1994).

[2] Appellant, in the interests of time and space, incorporates, in full, his Petition for Habeas relief, and the accompanying Memorandum of Law, in this Brief. See Appendix M.

[3] For example, Yousef, in his Administrative Challenge dated 27 July 2010, objected to the fact that he had never "received written notification of the basis for the SAM restriction." In his 09 August 2010 filing with the BOP, he objected to the SAMs on the basis that he first "be notified with notice and reasons for such restrictions." In the 18 October 2010 BOP challenge Yousef objected on the basis that "I have not received written notification of the basis for the SAMs, and the reason for the ongoing imposition and application of the SAM in general, . . ." He made similar objections in the BOP Administrative Challenges dated 25 October 2010 and 10 November 2010. These challenges were never directed against the conditions of confinement that the SAMs actually imposed upon him. See Appendix M.

repeatedly and on numerous occasions in these pleadings, and to assume a knee-jerk application and dispositional basis that relied upon *Padilla*, demonstrates that the lower court completely failed to understand what Mr. Yousef's case was all about.

It was made clear, beyond measure, that Mr. Yousef was seeking relief under the federal habeas statute solely and exclusively in order to challenge — <u>not</u> his conditions of confinement — but, rather, the determination, as made by the Department of Justice, that he was <u>subject to</u> the Special Administrative Measures. 28 C.F.R. § 501.3.[4] It is important to recognize, and as was laid out in the initial pleading with the district court (clearly and without question), that Yousef was <u>not</u> challenging the manner in which the Justice Department implemented the SAMs. If this were the case then Yousef would have no quarrel with the argument that *Padilla* prevails, and that it is the Bureau of Prisons (in the persona of the Warden of the U.S.P. Administrative Maximum) that should have been named as Respondent, and that the proper venue for this action lie in the U.S. District Court for the District of Colorado.[5] But, this was not the case, and is not the case here.

---

[4] *See, e.g.*, Yousef Memorandum of Law at pp. 9, 16, 18, 19, 20, 21, 23, 47-51, *passim*. Appendix M attached hereto.

[5] Yousef recognized that a direct and immediate impact upon his conditions of confinement would be affected by a determination that he was no longer subject to the SAMs. See Memorandum of Law at p. 16, n. 11. However, as was made clear in that footnote, "Yousef's "conditions of confinement" are not the primary target of this action, . . ." *Ibid.*

In the cases that Judge Duffy cited in support of his decision (other than *Padilla* and *Jabarah*) the inmate was challenging specific and defined conditions of confinement, making those cases inapposite to the habeas petition here.   In *Thompson v. Choinski*, 525 F.3d 205 (2d Cir. 2008), *cert. denied* — U.S. — (2009), which the lower court cited in support of the decisional nature of *Jabarah*, the inmate was specifically (1) challenging his conditions of confinement while incarcerated on federal charges in a Connecticut state prison, and (2) seeking to merge his habeas petition with a Section 1983 cause of action.   In so far as the former was concerned, these were deemed moot as the inmate was no longer under state custody.   With regard to the latter, the Circuit ruled that the two claims could be merged, and that the court could address the habeas issue.   Since the petitioner only had filed his claims with regard to the actual conditions under which he was being held (for example, in the state prison challenge he alleged that he "was not being provided with kosher food or with access to the prison library.") this case has no bearing on the Yousef petition.   Similarly, in *Drakoulis v. Ashcroft*, 356 F. Supp.2d 367 (S.D.N.Y. 2005), deemed to be a "core habeas" case (see discussion *infra*), the appropriate party respondent is the party actually holding the keys to the incarcerated individual's cell — *i.e.*, the warden of the immigration facility where he is being held.   *Id.* at 370-71.   Again, what distinguishes *Drakoulis* from that of the Yousef case is that Yousef's challenge is not a core habeas proceeding.

Finally, in *Santulli v. United States*, 2003 WL 21488084 (S.D.N.Y. 2003), the court dismissed the habeas petition, finding that the appropriate party to be named was the warden of the facility where he was being held in Kentucky. This was a core habeas petition in that it challenged the continued civil commitment of the petitioner as being classified a "dangerous person", under 18 U.S.C. § 4246. *Id.* at *2.[6] In the Yousef petition his challenge does not seek his release from custody (or from the "hands" of the warden at ADX-Florence). Thus, none of these cases provide guidance in the case before the bar.

Yousef's petition repeatedly stated, made clear, and presented legal arguments that related solely and uniquely to the issues set forth before the court — that Yousef, after more than sixteen years in federal custody, is no longer a national security threat, and that the ordinary BOP rules and regulations that govern inmate behavior and contact with the outside, are more than adequate to provide the necessary security and safety to both the American public and BOP personnel. Yet, the lower court never even addressed this point. In fact, Judge Duffy failed to even set forth what part of Yousef's petition actually sought relief from specific conditions of confinement — the reason, of course, being that his petition did not seek that relief.

---

[6] See also generally *United States v. Joshua*, 607 F.3d 379 (4th Cir. 2010) (jurisdiction to review civil commitment order issued under 18 U.S.C. § 4248(a)).

As was set forth in Yousef's Motion for Reconsideration, this is a non-core habeas petition. It does not challenge his actual confinement (or, derivatively, his conditions of confinement). *Padilla* was, and is, confined to core challenges to confinement. In *Padilla*, the petitioner challenged his incarceration at the U.S. Navy Brig in South Carolina as an enemy combatant. The Supreme Court, in an opinion by then-Chief Justice Rehnquist, ruled clearly that core challenges to confinement must be brought against the actual custodian of the petitioner, and be brought in the district where the petitioner is being held, *viz.,*

> In accord with the statutory language and *Wales'* [*v. Whitney*, 114 U.S. 564 (1885)] immediate custodian rule, longstanding practice confirms that in habeas challenges to present physical confinement - "core challenges" - the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official.
> 542 U.S. at 435.

In accord see *Meyers v. Martinez*, 402 Fed. Appx. 735 (3d Cir. 2010) (proper venue for challenge to continued confinement in BOP facility is district in which facility is located, *per curiam*); *Armentero v. INS*, 412 F.3d 1088 (9th Cir. 2005) (dissenting op., Berzon, J, at 1092-93).

As opposed to a confinement challenge — a core habeas petition — a non-core habeas petition needs to be addressed to the party who has made that non-core challenged action. *See, e.g., Abner v. Secretary of Dep't of Homeland Security*, 2006 WL 1699607 at *2-*4 (D. Conn. 2006). As long as a petitioner is not

actually challenging his physical confinement (*see, e.g., Santulli, supra*, where the petitioner was challenging his continued civil confinement under 18 U.S.C. § 4246), then *Padilla* will not be determinative on the issue of the proper respondent or venue for the situs of the habeas proceeding. *See, e.g., Evans v. United States,* 2010 WL 2026433 at *2-*3 (E.D.N.Y. 2010), *aff'd* 419 Fed. Appx. 53, 2011 WL 1261630 (2d Cir. 2011) (state inmate's challenge to method of calculating credit for a future federal sentence, not subject to situs/respondent strictures of *Padilla*).

Finally, it must be noted that *Padilla* does not create an ironclad rule that must be followed no matter the circumstances of the case. In his concurrence (joined in by Madame Justice O'Connor), Justice Kennedy recognized this when he wrote

> For the purposes of this case, it is enough to note that, even under the most permissive interpretation of the habeas statute as a venue provision, the Southern District of New York was not the proper place for this petition. As the Court concludes, in the ordinary case of a single physical custody within the borders of the United States, where the objection has not been waived by the Government, the immediate-custodian and territorial-jurisdiction rules must apply. . . . I also agree with the arguments from statutory text and case law that the Court marshals in support of these two rules. . . <u>Only in an exceptional case may a court deviate from those basic rules to hear a habeas petition filed against some person other than the immediate custodian of the prisoner, or in some court other than the one in whose territory the custodian may be found.</u>

542 U.S. at 453-54. Citation omitted. Emphasis added.

Mr. Justice Kennedy then went on to discuss what he characterized as "cases of nonphysical custody" (*id*. at 454); none of which either apply or are dispositive in Yousef's case.

Thus, in the appropriate circumstances the district court having proper venue may well not be the district in which the petitioner is incarcerated. *See, e.g., Ulloa v. Ledezma*, 08-cv-864 (W.D. Okla. July 1st, 2009) (2d Report & Recommendation of Magistrate Judge), where the court accepted the argument of the petitioner that his habeas case be transferred to the Western District of Texas on the bases (1) that "Petitioner's attorney is located there, records pertaining to Petitioner's case are located there and it is likely any necessary witnesses are located there. In addition, the Western District of Texas has superior knowledge of Petitioner's criminal proceedings." (*slip op*. at p. 3), and (2) that the Government, itself, has requested the transfer. *Slip op*. at pp. 6-7.

In accord see *Gustafson v. Williams*, 2010 WL 1904518 (D. Nev. 2010) (transfer of habeas petition to Minnesota, state of conviction, based upon fact that "The Court is persuaded that the convenience of the parties and witnesses and the interests of justice are best served by the litigation of all issues arising in this case on the petition challenging the Minnesota conviction in the District of Minnesota.", *id*. at *1.); *Carballo v. LaManna*, 2006 WL 3230761 (D.S.C. 2006) (notwith-

standing detainee's incarceration at BOP facility in South Carolina, transfer to district in state of conviction will be ordered).

In the case at bar, first of all, there is no question that all of the relevant records, documents, proceedings, and the decision making concerning Yousef's SAMs status, are located in New York. See Yousef Memorandum of Law at p. 29, n. 29. See Appendix M, attached hereto. Secondly, and not to be overlooked, is the fact that the Government has filed no responsive pleadings in this case to date. The U.S. Attorney for the Southern District of New York was served with both the initial Petition and accompanying Memorandum of Law and Exhibits, and the motion for Reconsideration. See respective Affirmations of Service. Nevertheless, the Government has never responded; the court having acted *sua sponte*.

Under such circumstances, it is the position of the Petitioner-Appellant that the Government has waived any objections to the position of Mr. Yousef. It is fundamental that the failure to raise an argument on appeal will be deemed a waiver of that argument. See *Perez v. Hoblock*, 368 F.3d 166, 171 (2d Cir. 2004); *United States v. Quiroz*, 22 F.3d 489, 490-91 (2d Cir. 1994) (*per curiam*). And, this rule is applicable not only on an appeal from the district court level, to the appellate level, but also where a party has failed to object to a report or decision of a magistrate judge, and that decision is on "appeal" to the district court judge. See *White v. Drake*, 2011 WL 4478921 at *8, n. 14 (N.D.N.Y. 2011) (collecting cases).

Similarly, the principle has been applied to the failure to raise certain arguments on the district court level. *See United States v. Canady*, 126 F.3d 352, 359-60 (2d Cir. 1997), *cert. denied* 522 U.S. 1194 (1998) (failure of Government to raise procedural default argument in district court precludes argument on appeal). In accord see *Washington v. Fischer*, 150 Fed. Appx. 8, 9 (2d Cir. 2005), *cert. denied* 546 U.S. 1217 (2006) (same); *Romero v. United States*, 2001 WL 921167 at *5, n. 8 (S.D.N.Y. 2001) (same). Thus, for example, in *Figueroa v. United States*, 2011 WL 3423390 (S.D.N.Y. 2011) (Koeltl, USDJ), the plaintiff's prior attorneys moved for an order from the district court for the release of earned fee funds, being held in escrow as part of settlement in a case with the City of New York. In opposition thereto, the plaintiff raised an argument of fraudulent inducement for the first time. The court ruled that this argument, which related to the settlement, and not the request for release of funds, should have been raised at the time the settlement was entered on the underlying lawsuit. Since had not been raised at that time, the argument had been waived. *Id.* at *3. In accord see *Melo v. United States*, 2011 WL 5597432 at * 4 (S.D.N.Y. 2011).

Indeed, in the context of habeas proceedings, the courts have ruled that the Government's failure to object to either jurisdiction, or the proper naming of the respondent (as required under *Padilla*), will be deemed a waiver thereof by the Government. See *Brown v. New York*, 2011 WL 3511004 at *1, n. 1 (E.D.N.Y.

2011) (the court here relying upon the concurrence of Justice Kennedy in *Padilla* (see *supra*), and this Court's decision in *Gooden v. Gonzalez*, 162 Fed. Appx. 28, 29 (2d Cir. 2005)); *Dawkins v. New York*, 2011 WL 3625150 at *1, n. 1 (E.D.N.Y. 2011) (same).

See generally *Blackstock v. Hufford*, 2011 WL 2470425 at *3 (M.D. Pa. 2011); *Cox v. Holt*, 2009 WL 4015567 at *2 (M.D. Pa. 2009).

Thus, the lower court having erred in determining that *Padilla* mandates a transfer of the case to the District of Colorado, this Court should vacate that decision and remand this matter for further proceedings.

## POINT TWO

### THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING ASSIGNED COUNSEL FEES UNDER THE CRIMINAL JUSTICE ACT

*Background*

As was set forth *supra*, on April 8th, 2010, Judge Duffy appointed counsel, herein, to represent Mr. Yousef before the court. The appointment was made pursuant to, and under the Criminal Justice Act, 18 U.S.C. § 3006A. See Appendix E, designated as Docket Entry No. 827, 93-cr-180.[7] The CJA appoint-

---

[7] It should be noted that this case differs from that in *United States v. Yousef*, 395 F.3d 76 (2d Cir. 2005). There the Court affirmed the denial of CJA compensation by the lower court. However, this denial was based solely, exclusively and entirely upon the fact that no CJA appointment had been granted to counsel, *viz.*,

16

ment voucher, significantly listed, in Box 10, "Representation Type", as "Habeas Corpus". This voucher form was signed by Judge Duffy on April 10th, 2010, as a *nunc pro tunc* date. See Letter to Judge Duffy dated March 9th, 2010, Appendix G (Under Seal).

According to the chronology of events, counsel herein, after receiving permission from the Court, visited with his client, at U.S.P. Administrative Maximum, in Florence CO, from October 24th to October 27th, 2010. Thereafter, on November 3rd, 2010, counsel herein submitted Interim Voucher No. 1. See Appendix H (Under Seal). This Voucher was paid in full (less the customary withholding of 20%), for both expenses and hours claimed.

Thereafter, counsel made a request to the Court for the appointment of a paralegal. See Appendix I, Letter of Kleinman to Judge Duffy, dated January 10th, 2011. This request was granted as Docket Entry No. 830. And a CJA Form 21 was issued specifically for the services of a paralegal. See Appendix J. What is significant about this letter is (1) it states the need for a paralegal is premised upon

---

Kleinman served as Yousef's CJA court-appointed counsel at trial and on direct appeal before this Court, *see United States v. Yousef*, 327 F.3d 56 (2d Cir. 2003) (upholding appellant's conviction of charges relating to a conspiracy to bomb United States commercial airliners in southeast Asia and charges relating to the 1993 bombing of the World Trade Center in New York City), and was fully compensated for those services. Kleinman was *not* appointed to serve as Yousef's counsel in connection with Yousef's habeas petition.
*Id.* at 77, n. 1. Emphasis in original.
See also *id.* at 78.

the anticipated length of the representation in this matter, and (2) "the issues with regard to my client's confinement, the Special Administrative Measures, and other relevant issues, involve significant records and documents that will require the assistance of a para-legal . . ." See Appendix I at ¶ 3.

Perhaps of greater importance is the letter sent to the Court dated September 8th, 2010. See Appendix N (Under Seal). This letter made unequivocally clear that counsel herein needed to be assured that his April 8th, 2010 appointment would cover an anticipated challenge to client Yousef's continued confinement under the Special Administrative Measures, *viz.*,

> I write to you now to inquire as to whether my CJA appointment will cover his challenge to the SAMs. Previously, when I had been appointed by the Circuit on Mr. Yousef's appeal, and a challenge was raised in court regarding this matter, the Circuit found that these efforts were covered under Section 3006A.

Letter of Sept. 8, 2010 at p. 2, ¶ 1.

While the District Court never directly answered this query, events that took place after this letter made clear that the answer was in the affirmative. First of all, as set forth above, Judge Duffy approved the appointment of a para-legal in December 2010. Secondly, in the same letter of September 8th, 2010, a request was made for permission to travel to see counsel's client in Colorado. See Sept. 8, 2010 letter at p. 2, ¶ 3. Thirdly, this request was granted by the Court. And, fourthly, Interim Voucher No. 1 was submitted on November 3rd, 2010, almost two months after the subject letter, and it was approved, in full.

On or about June 16th, 2011, counsel submitted the subject habeas corpus petition. See District Court Docket Entry No. 841. See Appendix M. The petition was accompanied by a fifty-three page memorandum of law, and four exhibits. The Memorandum of Law was almost 19,000 words in length, and cited more than 150 cases. Counsel spent considerable time on this Memorandum, as counsel is confident that the Circuit Court will recognize in its review of the submitted documents. As is set forth *supra*, in Point One, the sole and exclusive basis for the petition was a habeas challenge to client Yousef's designation as a party subject to the SAMs; not the conditions of confinement imposed under the SAMs. This was not only the basis for judicial review, but had been the specific challenges that Yousef had made administratively within the Bureau of Prisons Administrative Remedy Program. See Exhibit B to Yousef Habeas Petition.

The following day, on June 17th, 2011, counsel herein submitted Interim Voucher No. 2. See Appendix K (Under Seal). This Voucher covered the period from the date of the last Voucher (*i.e.*, November 17, 2010) through the date of submission of the habeas corpus petition (*i.e.*, June 16, 2011).

Following the submission of Yousef's Habeas Corpus Petition (duly served upon the U.S. Attorney), and without any response whatsoever from the Government, on July 22nd, 2011 the District Court denied granting the petition and ordered that "this action is transferred to the United States District Court for the

District of Colorado." See *United States v. Yousef*, 2011 WL 3422834 at *2 (S.D.N.Y. 2011). See Appendix C. See discussion in Point One, *supra*.

On September 2nd, 2011 counsel herein submitted a Motion for Reconsideration. This Motion included several exhibits, and a fourteen page Affirmation/Legal Memorandum. See Appendix F. As with the initial habeas petition this, too, was served upon the U.S. Attorney, and, again, as with the initial habeas petition, in the absence of any Government response, Judge Duffy denied this Motion. See *United States v. Yousef*, 2011 WL 4424334 (S.D.N.Y. 2011). See Appendix D. (The issues raised by the District Court in the denial of that motion are addressed in Point Three, *infra*.)

On or about September 12th, 2011, counsel herein spoke with Jerry Tritz, of the CJA Panel, and inquired about the status of the Second Interim Voucher. Counsel was informed (verbally) that Judge Duffy had denied any compensation whatsoever. In response thereto, counsel, herein, sent a detailed letter to Judge Duffy inquiring as to why the voucher had been denied, in full, and providing an explanation as to why it should have been granted. See Appendix L (Under Seal). This letter was faxed to Mr. Tritz, who brought it up to Judge Duffy's chambers. Subsequent thereto, counsel spoke with Mr. Tritz who informed him that Judge Duffy was unmoved by the letter, and was still denying any compensation whatsoever under Interim Voucher No. 2. (It should be mentioned that the district

court issued no written order, finding or decision regarding the denied voucher, and that all communications, from the district court to counsel herein, were over the telephone, with Jerry Tritz.)

*Legal Argument*

It is the position of counsel herein that the decision of Judge Duffy to deny any compensation whatsoever was an arbitrary and capricious decision, and a clear abuse of the court's discretion. Furthermore, as discussed below, such denial cannot be upheld in these circumstances and the Circuit Court should vacate this decision of the lower court, and grant the Interim Voucher in full, as submitted.

With regard to issues of both the request for services and payments to be made under the Criminal Justice Act, an abuse of discretion standard is to be applied. See *United States v. Frankel*, 2011 WL 5041691 at *1 (2d Cir. 2011). This standard of review is applicable to both specific requests by CJA counsel for specific services deemed necessary for representation, such as a para-legal, or an investigator, *see, e.g., United States v. Bah*, 574 F.3d 106, 118 (2d Cir. 2009); or even for direct certification of payment to the already assigned attorney. See *United States v. Burnett*, 989 F.2d 100, 105 (2d Cir. 1993).

This being said, as with any review of the lower court on an abuse of discretion standard, the issue is whether the district court exercised, fairly and prudently, the discretion it inherently possesses in reaching the subject decision. In defining the

21

limits and boundaries of "abuse of discretion", the Circuit, in the oft-cited decision

in *Zervos v. Verizon New York, Inc.*, 252 F.3d 163 (2d Cir. 2001), laid out both a

method of analysis, and the difficulties inherent in any such review, *viz.*,

> When a district court is vested with discretion as to a certain matter, it is not required by law to make a *particular* decision. Rather, the district court is empowered to make a decision - of *its* choosing - that falls within a range of permissible decisions. A district court "abuses" or "exceeds" the discretion accorded to it when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision-though not necessarily the product of a legal error or a clearly erroneous factual finding-cannot be located within the range of permissible decisions.[6]
>
> [6]We have noted: Discretion is said to be "abused" ("exceeded" would be both a more felicitous and correct term) when the decision reached is not within the range of decision-making authority a reviewing court determines is acceptable for a given set of facts. This determination that the range of acceptable decision-making has been exceeded in a particular case is assuredly one of law, but it is analytically distinct from a determination that a legal standard applicable to a generality of fact situations has been ignored, incorrectly applied, or inadequately applied in a particular case. * * *; *see also Eastway Constr. Corp. v. City of N.Y.*, 821 F.2d 121, 123 (2d Cir.[]), *cert. denied* 484 U.S. 918 ([] 1987) ("All discretion is to be exercised within reasonable limits. The concept of discretion implies that a decision is lawful at any point within the outer limits of the range of choices appropriate to the issue at hand; at the same time, a decision outside those limits exceeds or, as it is infelicitously said, 'abuses' allowable discretion."); United States Circuit Judge Joseph T. Sneed, *Trial Court Discretion: Its Exercise by Trial Courts and its Review by Appellate Courts,* Address to the Judges of the Second Circuit (Apr. 19, 1982) ("To have *discretion* is to have *choice.* To have choice is to be able to choose one course of action over one or more others with *immunity* from reversal by a higher court because of the course selected. The range of choice is determined by the number of permissible courses of action that exist.").

*Id.* at 168-69.  Citation and footnote omitted.  Emphasis in original.

In accord see *Shahiar v. Smith & Wollensky Restaurant Group, Inc.*, 659 F.3d 234, 250-51 (2d Cir. 2011); *Williams v. Citigroup, Inc.*, 659 F.3d 208, 212 (2d Cir. 2011); *United States v. Gonzalez*, 647 F.3d 41 (2d Cir. 2011) ("A district court abuses its discretion when its decision rests on an error of law or a clearly erroneous factual finding, or when its decision, though not necessarily the product of legal error or a clearly erroneous finding of fact, cannot be located within the range of permissible decisions . . ." *Id.* at 47.).

In other words, the discretion is not boundless or unfettered, and some rational, reasonable and understandable basis for the subject decision must be present either under the law, or in the record.  See generally *Wolters Kluwer Financial Serv., Inc. v. Scivantage*, 564 F.3d 110, 113 (2d Cir.), *cert. denied sub nom. Peters v. Scivantage*, — U.S. — (2009); *In re Holocaust Victim Assets Litigation*, 424 F.3d 158, 165 (2d Cir. 2005).  And, in the absence of such support — either legal or factual — the decision must be reversed.

This does not mean that this Court has no way to evaluate the district court's total denial of payment, and must fashion some sort of legal methodology.  There is sufficient precedent that provides a guidepost for this Court.  First, and perhaps foremost, is the recognition that appointment — and payment — of counsel under the Criminal Justice Act serves a fundamental, and constitutional purpose.  This

Court, in *United States v. Parker*, 439 F.3d 81 (2d Cir.), *cert. denied* 549 U.S. 985

(2006), made plain that fair compensation of appointed counsel is essential to the

fair administration of justice, *viz.*,

> We are mindful that "[a]n affluent society ought not be miserly in support of justice, for economy is not an objective of the system." *Mayer v. City of Chicago*, 404 U.S. 189, 201 (1971) (Burger, C.J., concurring).   We are equally mindful that, even under the Criminal Justice Act, which provides "one of the most generous compensation plans," the rates for appointed counsel are "low by American standards," . . ., and the "nature of CJA practice" involves "long hours away from the office."   *Fed. Trade Comm'n v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411, 415 n. 3 (1990), . . . ).   As a result, we agree with one district court's observation that "[t]he statute must be construed and administered in a way which will encourage competent and dedicated attorneys to become involved in the federal criminal courts for, if caseloads and statistics are any guide, our need for such lawyers will continue in future years." . . .

*Id.* at 108-09.  Citations omitted.

In accord see generally *United States v. Perry*, 471 F.2d 1069, 1070 (D.C. Cir.

1972); *United States v. Calle*, 178 F. Supp.2d 309, 310 (E.D.N.Y. 2001).

In this Court's review of Judge Duffy's decision not to provide any

remuneration, whatsoever, for counsel's work as set forth in Interim Voucher No.

2, it is important to recognize that the legislative history of the Criminal Justice Act

supports a liberal attitude towards the disbursement of funds.  See *United States v.*

*Sanchez*, 912 F.2d 18, 21 (2d Cir. 1990), citing to *United States v. Oliver*, 626 F.2d

254, 259-60 (2d Cir. 1980).[8] That being said, there is no doubt that, under the appropriate circumstances, the district court may "decline certification of payment for representation." *United States v. Burnett, supra*. Indeed, the Court in *Burnett* went so far as to state that "[l]ess [than the amount requested] can be down to no award of counsel fees <u>where the circumstances so warrant</u>, . . ." *Ibid*. Emphasis added. And, furthermore, the court will "exercise [its] authority to decline to grant a fee award <u>in appropriate circumstances</u>." *Ibid*. Emphases added.

In accord see *United States v. Melendez-Carrion*, 811 F.2d 780, 781 (2d Cir. 1987).

Some guidance is provided by the decision in *United States v. Tutino*, 419 F. Supp. 246 (S.D.N.Y. 1976).[9] There the district court was confronted with a

---

[8] See *United States v. Bailey*, 581 F.2d 984 (D.C. Cir. 1978), where the Court stated that the objective of the Criminal Justice Act is to provide meaningful representation, and this objective is done a "disservice[] by a narrow and miserly construction of the excess-compensation provision, . . ." *Id*. at 989.

   See also *United States v. Keeble*, 2008 WL 1792935 at *2 (N.D. Tex. 2008).

[9] It should be noted that Judge Cooper, in his preparatory comments, expressed serious reservations regarding the performance of the attorneys who had submitted vouchers for payment, *viz*.,

> We have had occasion to express with great pride the deep satisfaction that has come to us from the professional service rendered by members of our profession who have undertaken, at considerable personal sacrifice the representation of indigent litigants. We have frequently done so over the years in open court and in remarks on file in the clerk's office. Clearly their labors without stint brought forth exemplary professional performance, assured in large measure by an abiding sense of dedication to their calling. We certainly are not so fortunate here. In sharp contrast, we were disquieted by what confronts us in some of the instant applications for attorney's fees. Several of the petitioners lacked that degree of quality in their preparation and in-court performance to meet even minimal standards.

419 F. Supp. at 247. Footnotes omitted. Emphasis added.

request, by multiple attorneys for payment under the CJA. In reaching its decision, the court first stated that "the attorney seeking compensation must provide the trial Judge with an application sufficiently detailed to allow an exercise of informed judicial discretion." *Id.* at 249. Here the Court is referred to Appendix L (Under Seal), Interim Voucher No. 2. This Voucher complied, in all respects, with the requirements of this District. It included a four page "Out of Court Worksheet" detailing the dates work was performed, what the work was, and the time spent on that work. It was precisely the same as every other "Out of Court Worksheet" that counsel had provided in the past in myriad CJA cases, and was never questioned by anyone at either the administrative level, or, indeed, by the District or Circuit Courts themselves.

Secondly, Judge Cooper, in *Tutino*, stated that where the fee request is in excess of the statutory maximum, "the trial judge, when presented with a sufficient application in the appropriate case, must find that it involved 'extended or complex' representation." *Id.* at 249. In accord see *United States v. Porter*, 2010

---

The Court is asked to compare the above statement with that of the Circuit in *United States v. Yousef*, 395 F.3d 76 (2d Cir. 2005) (*per curiam*),

> We are mindful of Kleinman's admirably vigorous and tenacious legal representation of his client in difficult circumstances in this Court and elsewhere, and in denying his motion for rehearing we do not suggest otherwise.

*Id.* at 78.

WL 7141468 at *4 (E.D.N.Y. 2010) (Pollak, USMJ)[10]; *Keating v. People of the State of New York*, 2009 WL 3401756 at *2 (E.D.N.Y. 2009); *United States v. Mukhtaar*, 2008 WL 2151798 at *2 (S.D.N.Y. 2008), quoting from *United States v. Bailey, supra*, 581 F.2d at 987.  In the case at bar, first of all, in the Court's order with regard to the request by counsel to file interim vouchers (see District Court Docket Entry No. 830), this request was granted "because of the anticipated length of the representation in this case."  Secondly, Judge Duffy, himself, signed the letter granting permission to retain the services of a para-legal based upon the representation that "the issues with regard to my client's confinement, the Special Administrative Measures, and other relevant issues, involve significant records and documents that will require the assistance of a para-legal . . .."  See Appendix I at ¶ 3.

Finally, Judge Cooper, in citing to and quoting from *United States v. James*, 301 F. Supp. 107, 116 (W.D. Tex. 1969), stated that

> In the present opinion we considered to a great extent the factors identified in *United States v. James, supra* wherein the following criteria were set out:
> "the amount, character and complexity of work required; responsibilities involved; manner in which duties were performed; knowledge, skill and judgment required of and used by counsel; professional standing of counsel as reflected by length of time at bar, experience acquired and reputation established. . . ." Id., at 116.

---

[10] It should be noted that District Judge Dearie affirmed the decision and order of MJ Pollak, however, increased the amount of CJA compensation from MJ Pollak's order of $28,407 to $33,407. See *United States v. Porter*, 2011 WL 3348229 at *1 (E.D.N.Y. 2011).

419 F. Supp. at 249.

The Circuit is requested to review, in as much detail as it sees fit, to determine the amount of work, effort, energy, and research in which Counsel engaged, in producing the Legal Memorandum accompanying the habeas petition.[11]   In addition thereto, counsel has been a member of the Second Circuit and Southern District Bars for more than thirty years, has represented Mr. Yousef since 1998, and has done so, with unquestioned vigor and tenacity.  See N. 9 *supra*.[12]

As the facts and circumstances paid out herein make clear, the lower court abused its discretion and acted arbitrarily and capriciously in denying counsel his earned fees under the Criminal Justice Act.  As such, this Court should vacate this decision of the lower court, and enter an order granting Interim Voucher No. 2 in full.

_____

[11] With all due modesty, the work product presented to the lower court was neither "wholly inadequate" nor "for all practical purposes worthless", where a denial of CJA fees would be merited. *United States v. Burnett, supra*, 989 F.2d at 105.

[12] The Court is also referred to numerous cases in which various judges of this Circuit (both District Court and Circuit Court) have appointed counsel, under the Criminal Justice Act, and have approved compensation in excess of the statutory maximum based upon the quality and depth of counsel's work effort and product. *See, e.g., United States v. Yousef*, 327 F.3d 56 (2d Cir.), *cert. denied* 540 U.S. 933 (2003); *Armstrong I, II*, and *III*, respectively, 269 F.3d 109 (2d Cir. 2001), 7 Fed. Appx. 65 (2d Cir. 2001), 284 F.3d 404 (2d Cir.), *cert. denied* 537 U.S. 864 (2002); *United States v. Sessa*, 2011 WL 256330 (E.D.N.Y. 2011); *United States v. Reynolds*, 99-cr-520 (E.D.N.Y.), 01-1162, Ct. App.; *United States v. Munson*, 2009 WL 3198805 (2d Cir. 2009).

## POINT THREE

## THE DISTRICT COURT ERRED IN DENYING APPELLANT YOUSEF'S MOTION FOR RE-CONSIDERATION

*Background*

On September 2nd, 2011 Counsel herein filed a Motion for Reconsideration with the District Court. This Motion was filed forty-two days after the initial decision by the District Court (*i.e.*, July 22nd, 2011). This Motion (see Appendix F) cited, as authority for making the motion, Rule 60(b)(1) of the Federal Rules of Civil Procedure.[13] It included a thirteen page Affirmation/Memorandum of Law, and two exhibits (including the decision of July 22d). On or about September 20th, 2011 the District Court issued a four paragraph Memorandum and Order denying the Motion. See *United States v. Yousef*, 2011 WL 4424334 (S.D.N.Y. 2011), reproduced at Appendix D.

Judge Duffy denied the Motion on two bases:

    A. That the motion failed to raise any issues or facts that the Court had overlooked, and

---

[13] Counsel recognizes that, by practice, Rule 60 is limited to final dispositional orders of the district court. See *Remington Prods., Inc. v. North American Philips Corp.*, 755 F. Supp. 52, 53-54 (D. Conn. 1991), and cases cited therein. However, there is authority for the proposition that motions for reconsideration filed outside of the Rule 6.3 time limitations will be considered as "timely" either under Rule 59(e) or Rule 60(b). *See, e.g., Farez-Espinoza v. Napolitano*, 2009 WL 1118098 at *3 (S.D.N.Y. 2009), and cases cited therein (Government motion for reconsideration, notwithstanding having been filed late, is considered and denied, on the merits); *Gibson v. Wise*, 331 F. Supp.2d 168 (E.D.N.Y. 2004) (Court acknowledges dismissal under Rule 6.3, but considers merits under Rule 60(b)).

B. That the Motion was untimely under Local Rule 6.3 of the Southern District of New York,[14] which sets a fourteen day time limit for the filing of any motion for reconsideration.

*Legal Argument*

It is the position of counsel herein that this decision of Judge Duffy was in error, that there were issues of fact and/or law that the lower court had failed to address in its initial decision, and that the failure to abide by L.R. 6.3 was not fatal to the filing, or a merits disposition of the Motion.  On these bases, this Court should vacate Judge Duffy's order of September 20th, 2011.

With regard to issues of the alleged late filing under Local Rule 6.3: the cited Rule provides as follows:

> **Local Civil Rule 6.3.  Motions for Reconsideration or Reargument**
> Unless otherwise provided by the Court or by statute or rule (such as Fed. R. Civ. P. 50, 52, and 59), a notice of motion for reconsideration or reargument of a court order determining a motion shall be served within fourteen (14) days after the entry of the Court's determination of the original motion, or in the case of a court order resulting in a judgment, within fourteen (14) days after the entry of the judgment.

---

[14] Whether and to what extent L.R. 6.3 is applicable in the case at bar is not that clear.  The Rule is generally deemed applicable to civil matters only.  See generally *United States v. Mottley*, 2003 WL 22083420 at *1 (S.D.N.Y. 2003).  However, a number of district courts have deemed it, and applied the standards for review as set forth under L.R. 6.3, to criminal matters.  *See, e.g., United States v. Delvi*, 2004 WL 235211 at *1 (S.D.N.Y. 2004); *United States v. Greenfield*, 2001 WL 1230538 at *1 (S.D.N.Y. 2001).  While the habeas is, by definition, a civil proceeding, and, hence, should be subject to the strictures — such as they are — of L.R. 6.3, the nature of the habeas petition in the case at bar, and the fact that it is docketed under a criminal docket number (93-cr-180), make it more in the nature of a criminal matter.  Nevertheless, Counsel will address the issues here, assuming arguendo, that L.R. 6.3 is applicable (or at least the standard for review).

There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked. The time periods for the service of answering and reply memoranda, if any, shall be governed by Local Civil Rule 6.1(a) or (b), as in the case of the original motion. No oral argument shall be heard unless the Court directs that the matter shall be reargued orally. No affidavits shall be filed by any party unless directed by the Court.

In his decision, relying upon L.R. 6.3, he cited to *Grand River Enterprises Six Nations, Ltd. v. King*, 2009 WL 1739893 (S.D.N.Y. 2009), for the proposition that a failure to abide by this Rule "is by itself a sufficient basis for denial of the motion." *Id.* at *1. The court acknowledged that it has the power to treat a motion for reconsideration if made under F.R.Civ.P. 60(b), however, in the case at bar, "Petitioner has not presented any grounds to justify reconsideration." *Yousef, supra*, at *1.

Where a party seeks reconsideration, to prevail, the moving party must be able to point to some controlling decisions, or some facts that were overlooked by the deciding court. See *Jackson v. Killian*, 2010 WL 2103646 at *1 (S.D.N.Y. 2010). Such law or facts must rise to the level that, if they had been considered by the court, would have led to a contrary result. See *Shrader v. CSX Transportation Co.*, 70 F.3d 255, 257 (2d Cir. 1995); *Range Road Music, Inc. v. Music Sales Corp.*, 90 F. Supp.2d 390, 392 (S.D.N.Y. 2000). And, the denial of a motion, under L.R. 6.3 (whether characterized as one under Rule 59(e) or 60(b) of the Federal Rules of Civil Procedure) will be reviewed under an abuse of discretion standard. *Linden v.*

*District Council 1707-AFSCME*, 415 Fed. Appx. 337, 338-39, 2011 WL 1054031 (2d Cir.), *cert. denied* — U.S. — (2011).

With regard to the breath of the language of Rule 6.3, it is, first of all, basic to recognize that the overarching purpose of Rule 6.3 is to "ensure the finality of decisions and to prevent the practice of the losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *SEC v. Ashbury Capital Partners*, 2001 WL 604044 at *1 (S.D.N.Y. 2001). See also *Grand Crossing, L.P. v. United States Underwriters Ins. Co.*, 2008 WL 4525100 at *3 (S.D.N.Y. 2008).

In *Six Nations, supra*, cited by Judge Duffy, the court did re-iterate the strictures of the then ten-day filing requirement. See *Six Nations, supra*, 2009 WL 1739893 at *1. And, cited a number of cases in agreement therewith. *Ibid*. Nevertheless, courts have recognized that it is proper to entertain a Motion, even if filed "late", under L.R. 6.3. Thus, for example, in *Byrne v. Liquid Asphalt Sys., Inc.*, 250 F. Supp.2d 84 (E.D.N.Y. 2003), the court considered a motion for consideration, under Rule 6.3, even though filed twenty days after the subject decision. *Id*. at 85. See also cases cited and discussion in N. 14 *supra*.

Judge Duffy further denied the Motion on the basis that no new issues or facts had been raised in the pleadings. While that is certainly a basis for denying a motion for reconsideration (*see, e.g., In re BDC 56 LLC*, 330 F.3d 111, 123 (2d

Cir. 2003)), it is also clear that a motion for reconsideration may be granted to "correct a clear error or prevent manifest injustice." *Virgin Atlantic Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.), *cert. denied* 506 U.S. 820 (1992). See also *RST (2005) Inc. v. Research in Motion, Ltd.*, 2009 WL 274467 at *1 (S.D.N.Y. 2009); *Dickerson v. USAir, Inc.*, 2001 WL 12009 at *4, *7 (S.D.N.Y. 2001).

A review of what was submitted makes clear that it should not have been denied on the basis that it failed to involve a matter of fact or law that the lower court had overlooked.   What was made clear in both the initially filed Memorandum of Law for the habeas petition, and was re-iterated in the Memorandum of Law accompanying the Motion for Reconsideration, was that the premise upon which the habeas was filed was the imposition of the Special Administrative Measures — and NOT the conditions imposed thereunder.   See Point One *supra*; see discussion in Memorandum accompanying Motion for Consideration, p. 12 at ¶ 21.   Appendix F.   The lower court clearly and un-mistakably took Yousef's habeas petition as one challenging his conditions of confinement.   This was made clear by the district court's reliance upon *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), and *Jabarah v. Garcia*, 2010 WL 3834663 (S.D.N.Y. 2010).   See *United States v. Yousef*, 2011 W 3422834 at *1 (S.D.N.Y. 2011).

As was made clear in Yousef's Motion for Reconsideration these cases were totally inapposite to his habeas claims. See Memorandum accompanying Motion for Reconsideration at ¶¶ 11-17. And, the fact that Judge Duffy interpreted the habeas petition as one coming under the penumbra of *Padilla, et al.*, makes it clear that the court both misconstrued and misapplied the facts to the law.[15]  As laid out in Yousef's Reconsideration Motion, the habeas petition was a "non-core habeas case". See Memorandum p. 7 at ¶ 14. In the Memorandum Yousef's counsel cited to numerous cases in which *Padilla's* requirement of the "warden" being named as the respondent, and the venue being in the actual physical location of custody, was inapplicable in non-core habeas cases. 542 U.S. at 434-35. See Memorandum at ¶ 14, and cases cited therein.[16] And, the fact that the lower court failed to take this

---

[15] The district court further failed to address the application of the Supreme Court's decision in *Braden v. 30th Judicial Circuit Ct. of Ky.*, 410 U.S. 484 (1973). *Braden's* continued vitality — post-*Padilla* — was both addressed by the *Padilla* Court, and discussed in the Motion for Reconsideration. *Padilla, supra*, 542 U.S. at 438. See Memorandum of Law at p. 7 n. ‡, p. 9 ¶ 15.

 *Braden* also makes clear that the fact that Yousef is physically located in the District of Colorado is not dispositive on the issue of what district court possesses jurisdiction over him in a habeas petition. As long as the district court has subject matter jurisdiction over the filed habeas petition (and here that being a non-core habeas petition) then that court's process can reach the locale of the petitioner, even if outside that court's physical jurisdiction. 410 U.S. at 494-95. See also discussion in *Rasul v. Bush*, 542 U.S. 466, 478-79 (2004).

[16] In counsel's Memorandum of Law (see ¶ 14 therein) he cites to no less than eight district court decisions in which the courts held *Padilla* inapplicable to non-core habeas proceedings. The district court, in denying the Motion for Reconsideration neither addressed nor discussed any of these cases.

into consideration in its decision is made even clearer by the failure of the Decision on the Motion for Reconsideration to even address this argument.

Among the cases cited in the Motion for Reconsideration, and not addressed by the lower court, was *Hoyte v. Holder*, 2011 WL 1143043 (S.D.N.Y. 2011) — a case which provides a considerable degree of guidance in this matter. This case, though an immigration case, makes clear the precise argument that Yousef is making in his habeas petition — the <u>finding</u> that a party is subject to certain conditions of restraint (and not the actual conditions of restraint) — make the case a non-core habeas petition, and thus, not subject to the strictures of *Padilla*. The court, in *Hoyte*, makes this crystal clear in the following language,

> A district court may grant habeas corpus to a prisoner who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3) (emphasis added). The proper respondent is the individual with the ability to produce the petitioner. *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004). <u>For core habeas petitions, challenging "the physical custody of the petitioner," rather than **"the underlying immigration decision,"** "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official."</u> *Id.* <u>at 435, 447. "[C]ourts in this district have found that the Attorney General is a proper respondent in immigration habeas petitions, but only when the habeas petition is a non-core petition, that is, where it **challenges the underlying immigration decision**, as opposed to the physical custody of the petitioner."</u> *Shehnaz v. Ashcroft*, No. 04 Civ. 2578(DLC), 2004 WL 2378371, at *4 (S.D.N.Y. Oct. 25, 2004).

*Id.* at *2. Citations omitted. Emphasis added.

See also *Thelemaque v. Ashcroft*, 363 F. Supp.2d 198, 204 (D. Conn. 2005).

Compare *Zhen Yi Guo v. Napolitano*, 2009 WL 2840400 at *3 (S.D.N.Y. 2009) (*Padilla* binding as petitioner "is challenging only his physical confinement and 'not challeng[ing] the underlying immigration decision.'" quoting from *Shehnaz, supra*); *Jiang Xue Qiang v. I.N.S.*, 2006 WL 1026710 at *1 (E.D.N.Y. 2006) ("The habeas petition in this case, which challenges only petitioner's immediate physical detention, rather than the decision to deport him to China, is a 'core habeas petition.' . . . Accordingly, this petition can only be brought in the district of confinement.").

Thus, for the foregoing reasons, it is clear that the district court erred in its denial of Yousef's Motion for Reconsideration, and this Decision and Order of the district court should be vacated.

## CONCLUSION

For all of the aforementioned reasons this Court should vacate the decision below, both as to the transfer of the petition to the District of Colorado, and the refusal to pay fees under the Criminal Justice Act.

Respectfully submitted,

Bernard V. Kleinman, Esq.
Attorney for Defendant-Appellant

Dated:  December ___, 2011
White Plains, NY

37

## CERTIFICATION PURSUANT TO F.R.A.P. 32(a)(7)(B), (C)

Pursuant to Rule 32(a)(7) of the Federal Rules of Appellate Procedure, Appellant does hereby certify that said principal brief complies with the type-volume limitation of this Court's Rules, and said Brief contains 9,684 words of text.

Bernard V. Kleinman
Attorney for Appellant

Dated:  Dec. 9, 2011
         White Plains, NY

## CERTIFICATE OF SERVICE

I do hereby certify that a true and accurate copy of the foregoing BRIEF AND APPENDIX was mailed on the 9th day of December, 2011, by First Class Mail, postage prepaid, and/or by express private carrier, and/or by e-mail, to the following parties:


KATHERINE FAILLA, ESQ.

ASST. U.S. ATTORNEY

SOUTHERN DISTRICT OF NEW YORK

1 ST. ANDREWS PLAZA

NEW YORK, NY 10007


Law Office of Bernard V. Kleinman, PLLC
Bernard V. Kleinman, Esq.
Attorney for Petitioner-Appellant YOUSEF
2 Gannett Drive, Suite 418
White Plains, NY 10604
Tel. (914) 644-6660
Fax: (914) 694-1647
Email: attrnylwyr@yahoo.com