IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Richard P. Matsch

Civil Action No. 12-cv-2585-RPM

RAMZI YOUSEF,

    Applicant,

v.

UNITED STATES OF AMERICA,

    Respondent.

---

**ORDER DENYING MOTION FOR RELIEF FROM JUDGMENT AND REQUEST FOR TRAVEL AUTHORIZATION**

---

    Pursuant to Federal Rule of Civil Procedure 60, Ramzi Yousef seeks relief from the Court's judgment dismissing his habeas corpus Application upon concluding that the conditions of Yousef's confinement are not so atypical or impose such a hardship as to infringe upon a liberty interest protected by the Due Process Clause to the Fifth Amendment. [Docs. 83-84.] Yousef contends that relief is justified under Rule 60(d)(3), dealing with fraud and misrepresentation by an opposing party, and/or under Rule 60(b)(6), which allows courts to grant relief from a final judgment for "any other reason that justifies relief." [See Doc. 88, Ex. 3 at 45.] Yousef also requests travel authorization for his counsel under the Criminal Justice Act ("CJA"). [See id. ¶ 3.]

    Yousef first argues that the Court misapplied the four-part test established in Estate of DiMarco v. Wyo. Dept. of Corrs., 473 F.3d 1334 (10th Cir. 2007), by "[finding] that a failure . . . to satisfy any one of the parts is fatal to a finding of a violation of a protected liberty

interest." [Doc. 88, Ex. 3 at 5.] Yousef emphasizes that "the four factors . . . are merely guidelines and do not set forth a strict test of constitutionality[,]" that the DiMarco factors are "non-dispositive," and that other factors beyond the four described in DiMarco may enter the analysis. [Id. at 5-6.]

In its Memorandum Opinion and Order, the Court stated the applicable standard as follows:

> Determining whether conditions are atypical and impose a significant hardship requires a "fact-driven assessment that accounts for the totality of conditions presented by a given inmate's sentence and confinement." [Rezaq v. Nalley, 677 F.3d 1001, 1014 (10th Cir. 2012)]. Relevant, non-dispositive factors in that assessment include whether: (1) the restriction relates to and furthers a legitimate penological interest; (2) the conditions of confinement are extreme; (3) the restriction increases the duration of confinement; and (4) whether the restriction is indeterminate and of significant duration. Estate of DiMarco v. Wyo. Dep't of Corrs., 473 F.3d 1334, 1342 (10th Cir. 2007).

[Doc. 83 at 2-3.] The Court then went on to apply that standard, concluding upon the way that each factor weighed against or slightly against recognizing a liberty interest. [Id. at 4, 9, 11.] No factor was dispositive. Yousef's belief that the Court misapprehended and/or misapplied the standard is misplaced. The Court employed a fact-driven assessment guided by applicable precedent and made its decision based on the totality of conditions presented.

Yousef contends that the Court erred in relying on Sattar v. Holder, 2012 WL 882401 (D. Colo. 2012) for the proposition that the government may look to the nature of an inmate's underlying crime in imposing certain restrictions of confinement. [Doc. 88, Ex. 3 at 10.] As Sattar and its line of cases in this District make clear, it is appropriate for prison officials to consider an inmate's crime in imposing such restrictions, because the crime informs the penological interests implicated by the inmate's presence at a given prison. Yousef's attempts to factually distinguish the Sattar line of cases [see id. at 10-11] are not convincing,

either. Whatever differences between the restriction imposed or the justifications for imposing them beyond the inmate's crime, the principle is the same: an inmate's crime may be part of the calculus.

Yousef also argues that the passage of time and his relatively clean record in prison should diminish the weight of the nature of his crime in this analysis. [See id. at 11, 16-18.] Yousef's argument ignores the fact that his "crime" remains one of the most infamous terrorist attacks on United States soil, and that the threat of Islamic extremism is clear and present. While Yousef may be frustrated that he remains a motivating force for extremists, that is not, as Mr. Kleinman contended [see id. at 12-13], out of his control; no one forced Yousef to bomb the World Trade Center. As he made clear at his sentencing hearing, he very much chose to do it:

> Yes, I am a terrorist and I am proud of it. And I support terrorism so long as it was against the United States Government and against Israel because you are more than terrorists, you are the ones who invented terrorism and using [sic] it every day.

[Doc. 39, Ex. A ¶ 12.] Respondent also presented evidence indicating that Yousef still harbors those views. [See Doc. 36 at 7-8 (restricted).] In this context, even if Respondent's reliance on Yousef's crimes in imposing Special Administrative Measures is wearing a bit thin, and even if Yousef's post-incarceration conduct has not been marred by chronic infractions, he cannot credibly maintain that Respondent has no penological interest in restricting and monitoring his communications.

Yousef faults the Court for unduly deferring to Respondent in matters affecting national security. [See Doc. 88, Ex. 3 at 14-16.] In rendering its decision, the Court did not simply take Respondent as its word. The Court well recognizes the important function played by federal courts and their co-equal status in our constitutional system.

As for the Court's application of the second DiMarco factor, Yousef first argues that the Court erred when it concluded that, because "Yousef's conditions are less [extreme] than those imposed on the inmates at the supermax in Ohio (the subject of the Wilkinson case), Yousef has failed to satisfy this Factor." [Id. at 19-20.] The Court did not, as Yousef maintains, base its analysis solely on the conditions deemed relevant by the Supreme Court in Wilkinson; the Court also compared Yousef's conditions of confinement to conditions faced by other prisoners in H Unit and in the ADX General Population Unit. [See Doc. 83 at 6-9.] Moreover, the Tenth Circuit has said that "[a] comparison to the conditions at issue in Wilkinson can also be instructive when considering conditions in segregated confinement." Rezaq, 677 F.3d at 1014.

Relatedly, Yousef contends that the Court used an improper baseline by which to measure whether the conditions of Yousef's confinement are extreme. [See Doc. 88, Ex. 3 at 8, 35-36.] In making such a measurement, "it is appropriate to compare the nature of the challenged conditions to the type of nonpunitive confinement routinely imposed on inmates serving comparable sentences." Rezaq, 677 F.3d at 1014. In Rezaq, a case involving conditions in ADX's General Population Unit, the Tenth Circuit compared conditions in that Unit with "conditions experienced in any solitary confinement setting." Id. at 1015. Here, the Court used H Unit, the ADX General Population Unit, and the facility in Wilkinson as comparators. All of those units housed inmates serving comparable sentences to Yousef in the sense that they are high-risk and create the need for administrative segregation. The Court perceives no error in this approach.

Yousef next faults the Court for deciding the case based on a record that only included the declarations of federal prison, law enforcement, and national security officials, and the

4

submissions of counsel for Respondent. [See Doc. 88, Ex. 3 at 5 (characterizing record as "all but *ex parte* in spirit").] The Court held a hearing with the parties on January 29, 2014 after Respondent filed its Answer detailing the conditions of Yousef's confinement. Counsel for Yousef did not raise objections to Respondent's characterizations at the hearing, nor did counsel request the opportunity to file a Reply detailing those objections. Two-and-a-half months later, after Respondent supplemented its Answer at the Court's request to better describe Yousef's conditions, counsel for Yousef submitted a "Motion" under the CJA in which he requested permission to file a Reply, among other things. [See Doc. 81.] Because the motion was styled in that fashion, the Court did not immediately direct its attention to it, thinking it was simply an administrative request under the CJA that could be handled once the Court completed its Memorandum Opinion and Order. By the time Mr. Kleinman repeated his request on May 13, 2014 [Doc. 82], the Court had already reached its decision [Docs. 83-84]. The Court apologizes for that inadvertent mistake.

In any event, the Court now has the benefit of Yousef's view of his incarceration conditions, and his position on Respondent's description of those conditions. [See Doc. 88, Ex. 3 at 20-34.] Giving due weight to Yousef's assertions, the Court concludes that the conditions of his confinement are still not extreme under the second DiMarco factor. The Court is also not persuaded, as Yousef seems to insinuate [see id. at 49-51], that Respondent fabricated evidence or misrepresented the actual conditions of Yousef's confinement.

Yousef faults the Court for considering the third DiMarco factor at all because Yousef is serving a life sentence. [See id. at 37-38.] The plaintiff in Rezaq was serving a life sentence, see Rezaq v. Nalley, No. 07-cv-02483, 2010 WL 5157317, at *1 (D. Colo. Aug. 17, 2010), and yet the Tenth Circuit included the third DiMarco factor in its analysis and concluded

5

that, because confinement at ADX did not lengthen plaintiff's sentence, it did not weigh in favor of finding a liberty interest, see Rezaq, 677 F.3d at 1015-16. Again, Yousef's argument is unavailing.

In attacking the Court's analysis and conclusion as to the fourth DiMarco factor, Yousef claims that the Court's determination that the conditions of Yousef's confinement are reviewed three times every year is mistaken because the annual SAMs review is distinct from the twice-annual Program Reviews conducted as part of ADX's Security Unit Program. [See id. at 39-42.] The Court recognized the differences between reviews [see Doc. 83 at 11], but all three concern the conditions of Yousef's confinement.

Yousef also argues that the SAMs renewal process is essentially a sham designed to impose SAMs on Yousef in perpetuity. [See Doc. 88, Ex. 3 at 43-44.] The Tenth Circuit has said that "it is not necessary[,]" in considering the fourth DiMarco factor, "to closely review the process . . . ." Rezaq, 677 F.3d at 1016. The validity of the process is to be tested at the second stage of a due-process analysis. See id. How Yousef's confinement conditions are reviewed is a separate question from the frequency with which they are reviewed.

For the foregoing reasons, the Court concludes that Yousef is not entitled to relief under Rule 60 from the Court's judgment dismissing his habeas Application. [Doc. 84.] This decision supplements the Court's Memorandum Opinion and Order [Doc. 83], particularly as it pertains to the Court's review of Yousef's positions concerning the conditions of his confinement.

Finally, Yousef requests an "Order granting Travel Authorization to Attorney Kleinman and his Para-Legal as set forth in the prior submitted motion to the Court[.]" [Doc. 88 at 1.] Yousef's "prior submitted motion to the Court" asked for travel authorization so Kleinman

and his paralegal could visit Yousef and consult with him for the purposes of preparing a Reply to Respondent's Answer. [Doc. 81.] Yousef's request is moot.

Upon the foregoing, it is

ORDERED that Applicant Ramzi Yousef's Motion for Relief from Judgment [Doc. 88 ¶ 1] is denied, and it is

FURTHER ORDERED that Ramzi Yousef's request for travel authorization [Doc. 88 ¶ 3] is denied as moot.

Dated:  June 26, 2014.

BY THE COURT:

**s/Richard P. Matsch**
_____
Richard P. Matsch
Senior District Judge